Good morning. Good morning, but we're here for the next argument. It's Kaplan versus Nautilus Insurance Company. Matthew Weaver is here for the appellants. Scott Cole is here for Appalachian Appellants. And Mr. Weaver, you may begin. Thank you, Your Honor. May it please the Court. My name is Matt Weaver and I represent the appellants here. Mr. Abbey Kaplan. Is that better, Your Honor? Yes. Thank you. My apologies. Again, I represent Mr. Abbey Kaplan v. Silverman. Kluger Kaplan v. Silverman. Okay, you're trailing off again. We're having a hard time hearing you. It helps if you lean forward. I can't hear. Let me move my computer. Is that better? Yes, that's much better. All right, let's see how we do here. You're welcome. Again, this is a first party statutory bad faith case under Section 624155 Florida Statutes. We contend that the district court's order granting summary judgment to Nautilus should be reversed for two principal reasons. The first is that the order disregards record evidence. It creates a genuine issue of material fact that Nautilus's lack of good faith caused Mr. Kaplan and Mr. Silverman to lose their terms on their investments and their law firm to lose profits. Second, the order is the first that we can see under Florida law that applies collateral estoppel as a bar to damages under the statute that were not recovered in prior litigation against the insurer. Now, related to that issue, the order also disregards the existence of other damages that the arbitration panel did not award, not because they were not reasonable, but because they weren't covered under the policy at all. Those include the money that the Kluger Kaplan firm spent or incurred defending itself. That's about $134,000 in damages. It also includes fees and costs that were incurred in the arbitration for experts for the appellants, though the district court didn't consider those as as relevant to its collateral estoppel analysis. Now I want to begin with the issue of lost profits and lost return on investment. We have a decent sized record here. And may I ask you a question before you start with regards to lost profits? Is there is there a case on point in Florida law regarding that? Or is that something that is still sort of undecided? In terms of lost profits being recoverable under the statute, there are several cases that are recoverable under the statute of cases like BK Cypress is probably probably the best one that analyzes the issue, but there are others. The case suggests that these are the type of damages as well. So we have we have some guidance, but we don't have I don't believe case that is applied the nebula glass standard that this court articulated in its opinion. In that case, few such damages under the statute. I would say the court didn't really say that you're not entitled to lost profits and lost return on investments. Did it? I think what it essentially said is that though that the testimony and the evidence that you relied upon was too speculative. So do we really need a case? Do we need a case that tells us whether or not you're entitled to it? Because it seems like that this report said, you know, didn't support, um, didn't support the award of it. And that's a correct reading of of the order. You're on. I agree. Um, and as to that issue, I think we have a contingent of error there. Um, this court, the United States versus Stein in a unanimous on bonk opinion in 2018 said that the concept of self serving testimony isn't something that can prevent the we contend that's exactly what the district court did. The district court looked at the evidence on the record and said this is nothing but self serving speculative testimony. Um, there are two problems with that. One, it's contrary to Stein, as I mentioned, and two, it ignores other evidence in the record. Um, you have here more than just the party's testimony about the existence of the damages. There's corroborating evidence in the record, um, in the form of the actual amounts that these folks had to spend, um, the amounts of and returns on the investments that they were making. We also know about their investment history. We also know about, um, the way these damages were measured. In fact, the experts that were hired by both sides agree on on the way these should be measured. So I think our main point of contention on the lost profit issues is just that you have one plenty of record evidence here that should be credited to the appellants and prevent the entry of summary judgment on these issues. Was there any evidence that, uh, the firm lost clients or turned away any clients? So no, your honor, there was not that evidence. What the evidence showed in relation to the firm was that client work didn't get done as quickly. Mr Kaplan was the corporate representative for the firm, and his deposition testimony speaks to that. But it's certainly not not cougar Kaplan's contention that, um, clients were lost or, um, you know, that issue existed as a result of having to divert resources away. The contention is that, um, work was done slower. And ultimately, these these, um, the time that was spent, you know, incurred on this matter could have been put toward billing hourly clients that would have earned some rate of return. So let me let me ask you a question about that. So I was a little bit confused about that. So the the award for the arbitrator gave you and correct me if I'm wrong, but I thought it gave you the money that, um, it basically gave you attorney's fees. I mean, it was it was a law firm that, you know, so I mean, basically gave you attorney's fees. Um, so it doesn't seem like you have lost any money there because you got that. And then on the lost profits, it seemed like your Well, you would have used money that you would have made from collecting fees for investment opportunities. Um, but instead you, you know, you didn't have the money because the insurance company. So I am first. Am I just understanding that right? I don't think that's quite right. You're on. Okay. Starting with the issue of actual fees that Mr Kaplan, Mr. The arbitration panel awarded them about 1.46 million of the little over $2 million that they actually spent. And this money was actually spent. So our contention is that those that the delta there between what they were awarded and what they actually spent is recoverable here. On on the issue of the firm's time, the firm had to spend time for two principal endeavors. One was toward assisting in the defense, Mr. Kaplan and Mr. Silverman. The arbitration panel awarded, I believe is about $104,000 of that time. But there were still several $100,000 in that time that the arbitration panel did not. The arbitration panel also did not award any money or any damages under the contract. For time the firm had to spend attempting to prevent itself from being added as a party in Cordell case, that that's a bucket of about $140,000. So out of almost $600,000 in time, the firm spent of its own time, the arbitration panel awarded about 104,000. So when it comes to lost profits, the contention is that had those those monies been available, either to Mr. Kaplan and Mr. Silverman or firm, Mr. Kaplan, Mr. Mr. Silverman would have earned returns on $140,000. So the loss profits, though, up for the firm, I guess, yes, it could be could be sort of calculated in one of two ways. It could be, you should have gotten a turn. I mean, this is your argument. I'm just trying to say argument that you should have gotten the money, basically as attorneys fees in the arbitration. That's one way to think about it. The other way to think about it is as a lost profits way. Well, we spent all this time doing this work, when we could have done work for paying clients. That's kind of a lost profits analysis. Yeah, you look at it both ways, I guess. Yeah, there's, I think we  have the time that the firm had to spend, right, and then you have the profits on that time. So in in, I think that the best way to view this, if you look at Mr. Elkins report, which is in the record, it has a more concise explanation, exactly the breakdowns of these different types of damages and how they were calculated. On the on the true law, what I can, what I kind of consider the true lost profits issue, which is the idea that the partners spent money, did not make money would have invested that money would have profited off that. What's, what's the evidence in the record that establishes that there's some certainty as to what those profits would have been. We'd have the returns on the investments that were actually being made at the relevant time. With respect to Mr. Kaplan, we have actual account statements in these investments. Thank you. Mr. Kaplan was investing in two separate ways. He was investing in a company called Orion, which are real estate entities. And he was also investing in traditional investment accounts, Merrill Lynch accounts. So we know the returns that those investments would have been made at the time periods when Mr. Kaplan would have had the money to invest, but didn't. So that's that's sort of the benchmark. And for Mr. Silverman, he was investing in an entity called Coast to Coast. Coast to Coast is an online consumer lending business that does microloans and federal employees. That was an open for investment opportunity. Corporate rep of Coast to Coast testified to that position. So we know that Mr. Silverman was actually investing in Coast to Coast during the relevant time. We know how much he did invest, we know how much he would have invested, and we know the result. How do we know how much he would have invested? And this is what I'm trying to figure out. So it seems like the strongest case would be, if, for example, I make a 10% contribution to my paycheck, and then I stop making those contributions, because I've got something going on, right? That seems like the strongest case. It just doesn't seem like we have that case here. I think what we have, Your Honor, is we have a track record of actually making the investments. We know that the money was available to Mr. Silverman, had he not needed to spend it in his own defense in the Cordell case, as he actually did spend it. So the inference exists in Mr. Silverman's testified case, that had he had that money available to invest, he would have done so. Nautilus doesn't really quibble with that. They actually say in their brief, you might have done it, you might not have. For purposes of summary judgment, that should be enough to get us past this. Thank you, Mr. Weaver. Mr. Cole, you may proceed. Good morning. May it please the court. My name is Scott Cole. I'm here on behalf of Nautilus. Judge Brasher, I'll address your question to my colleague, Mr. Weaver, first. There really is no evidence, other than the self-serving testimony of Mr. Kaplan and Mr. Silverman, and their expert who solely bases his report on the assumptions that what they say is true, that they would have made these investments and garnered any lost profits. There was no evidence of their testimony that they were making investments, that they established a track record of making investments on their profits. Judge Wilson, they did say that they had made investments in the past, and they had a track record of returns on those investments. However, there's not a shred of evidence. And as Judge Brasher mentioned, what you need here is an investment plan. And that's what we learned from the Messer case and the Sherwood case. You need an investment plan, and an indication that it would have been followed, such as what Judge Brasher said, you need evidence that 10% of my paycheck went out into my 401k, or these investment portfolios that they were investing in, and then it stopped because they had to fund this defense. That's what we don't have here. All we have is these two gentlemen looking back in time, saying, oh, well, had I had this extra money, I would have added another 100,000 in Orion 4, or 100,000 in Orion 6, or 50,000 in Coast to Coast, or another whatever number of developmental investment they were having. That's all we have. There is not a shred of evidence in the sense of an investment plan, or something they did on a regular basis, on a regular basis consistently, with regard to what they would have invested in, how much they would have invested in, how they would have invested it, the timing of when they would have invested it. And if we don't have those, we cannot possibly have the rate of return. Because as we all know, investments change every day. And I'm glad Mr. Weaver brought up the expert testimony, because I think it's crucial to this case. If you look at what the expert said, and remember, Kaplan invests through an LLC, and Silverman invests through an LLC. Those LLCs include family members and their spouses. So their expert, Elkin, he never looked at their own personal accounts. He never determined if they had other monies in their own personal accounts with which to invest. So for all we know, Kaplan and Silverman could have been sitting on a ton of other money, and never use it to invest at all. So to sit here and say, Oh, had I had this million bucks, that Nautilus didn't fund the defense of readily available to me, I would have bought Amazon or would have invested more on these other, other investments. So he never looked at that to see if they had other monies available with which to invest. But Mr. Cole, I mean, I'm not sure that that's a winning argument for you. Because at the end of the day, them having to invest into some other pot is, is beside the point, because the issue is that they didn't have money that was coming in that month, because they had to then pay for their defense. So whether they had money sitting in another pot is irrelevant. Judge Legault, I would respectfully disagree with you for this reason. Not only did they not show when they would have invested, how they would have invested, or how much they would have invested or the rate of return, which is dependent on all those factors, or, or what investments they would have made. But they also are saying, had we had this money, we would have invested more in these other funds. But that doesn't rule out that they didn't have that money. And if they did have extra money, they would they should have used that money to invest in these other funds. You know, also, what's important, and I want to refer to Mr. Elkins testimony, that's their expert. He said on page 965 966 of the record, he never looked at some of the investment vehicles to see if they could even have invested them at that time. And that includes Orion for Orion six. So he never even determined if Kaplan had the money. This is for Kaplan only not Silverman. If he had had the money, if the investments would have accepted it. He also never determined again for Kaplan only coast to coast and domestic funding. They were raising money in the time period that Kaplan said he didn't have the money available to him. But he doesn't know that they would have accepted extra money. And these are funds that they go out and they ask for investors to pay them money to do certain things. So they might, they may have been topped out, they may not have accepted the money. So without knowing any of that information, it's rank speculation of somebody looking back saying, had I had this money available to me, that's what I would have done. And judge, although I respectfully believe that it is a winning argument to show, well, he didn't have this money available, he had a bunch of other money available, he invest with. So that shows that that wasn't his intent, he wouldn't have invested this money. And you know, it's interesting, if you look at what Elkins said, he said as his entire opinion, and I can refer to it 964 965 978. Based on his entire opinion with regard that's to Kaplan is based on assumptions of what Kaplan said he would have done. That's simply not enough. And Judge Wilson, we do know that they did certain things in the past. That doesn't mean they're going to do in the future. That doesn't mean they were able to do them in the future, or they could have done and the investments may not take in the money. With regard to Silverman, same thing 122231028 of the record. And I apologize for rapidly citing those sites to the court. But I think it's an important issue that I would ask that the clerks go back and look at Elkins testimony and his reporter key, there's nothing in this record, absolutely nothing other than them saying, looking back in time saying this is what I would have done. The case law is clear. Mr. Cole, let me ask you, let me ask you a question about that. Because I, to me, I think that's a really important point. And it goes back to a question that Judge Wilson asked, is this a credibility issue? So they've said they've come in, and they've said, we would have done this in the past. Is that a credibility issue? Or is it a sufficiency of the evidence issue? Whereas I mean, I don't think you're arguing that they're liars. I think you're arguing that it's just insufficient evidence to prove this with the certainty required by law, lost profits to just say we would have done this in the past without sort of a record of doing it so that it could be certain, which is the legal requirement. Judge Brashley, you're 100% correct. And thank you for clarifying. It wasn't clear. It's an insufficiency of the evidence. And that's why the district court said in its order, a plaintiff self serving assertion is precisely the type of evidence that is insufficient to establish lost profits. And I want to address that point again, because Mr. Weaver brought up the Stein case. And he said, Oh, well, under the Stein case, you can't just dismiss somebody's statements as self serving, because that's weighing the evidence and that's making a determination that is not supposed to be done under Rule 56, summary judgment. That's not what the district court did here. The district court looked at the evidence and said, under establishing lost profits in Florida, you must show them with reasonable certainty. And reasonable certainty is not someone saying, I would have done this when we're not sure it would have been done. That's not reasonable certainty. Florida law for lost profits, and we saw this in Messer and Sherwood, they must show that there was an investment plan, and they had an opportunity to follow that plan, and they didn't follow that plan, because of something my client did. Let me ask you a hypothetical that goes to this, I think. So if the plaintiff had come in and said in an affidavit, a completely self serving affidavit, I follow an investment plan. For the last 50 years of my life, I have invested 10% of my monthly income in Walmart stock. Right? The mere fact that that was self serving, wouldn't mean that that doesn't meet the standard, right? I mean, the mere fact that's the plaintiff's testimony is not what's key here. It's the fact that their testimony was just, I would have done this had I had the opportunity and not, I regularly do this, so we can establish it with certainty. I'm sorry, did I talk over you? My question is, does that make sense? Am I speaking sense? Well, the Stein case told us, as Mr. Weaver said, that the mere fact that an affidavit is self serving is not in and of itself enough to defeat a summary judgment, or to grant a summary judgment, I apologize, to grant a summary judgment. But what the Stein case also said is, and I'm going to quote, we do not mean to suggest that a self serving and or uncorroborated affidavit will always preclude summary judgment. And so we have here is self serving testimony. And the key, the next step is it was uncorroborated. May I ask you a question, Mr. Polk? The Florida Supreme Court in the Harvey B. Geico case that came out in 2018, did they not say that reasonable foreseeability is ordinarily a question reserved for the fact finder? And Judge Lagoa, thank you that well, Harvey was a third party bad faith case. This is a third first party statutory bad faith case. And reasonable foreseeability under the statute just deals with the type of damages that they may be able to obtain, they still must prove those damages. And that's one of the things that I respectfully state that Mr. Weaver made a mistake on in his reply brief. The reasonable foreseeability is the damages that you have an opportunity to obtain under the statute. You still must prove them. And lost profits must be proven with reasonable certainty. Can you tell me what the standard is? Is it a heightened standard that the court is supposed to apply? Or what is the standard that the court is supposed to apply when looking at that, if they've met lost profits? It's a reasonable certainty standard that the court looks at and the district court did look at. And to kind of segue into your question and Judge Brasher's question, the district court didn't say, oh, this testimony is self serving, I'm dismissing it. The district court looked at the testimony and said, it's insufficient under the reasonable certainly certain, certainly, I'm sorry, reasonable certainty standard in Florida to establish lost profits. And the district court went through a detailed analysis on that. The cases cited by Mr. Weaver in the reply brief, including the Stein case was just, oh, it's self serving. We're not considering it. I'm absolutely not what occurred here. The district court wrote a 28 page order. In this case, it was a very detailed order, he went through all the investments, he named the type of investments by name. And he set forth what was missing. It was the, you know, 900 pound grill in the room that was missing anything else other than the self serving testimony. It was all absolutely missing. And one other thing I wanted to point out what their own experts said, and he did say this, for both Kaplan and Silverman, most of my examples were Kaplan earlier. And he didn't made the same assumptions with Mr. Silverman's investments, but he testified and this is on 1033 of his of the record of his deposition. He's never testified before in a case based primarily on an assumption. And that's what he did here. All of these profits, these lost profits analyses were on assumptions. So with regard to that part of the case, it's clear that we believe the district court should be supporting this until of evidence supporting this other than them saying, this is what I would have done had I had this money. And under the Messer case, Sherwood case, the other cases we cited in our brief that the district court cited, that's simply not enough. You can't award lost profits, which are dependent on a party taking action that is unclear that would have been taken. The other part of the case is the lost monies to the firm. Judge Wilson, I believe you addressed that sufficiently. Your question to Mr. Weaver was sufficient for what I would say is that they're saying that the firm lost profits because they had to spend this money and defending the firm from being added to the excuse me, the court action, which was the second of the three cases we're dealing with in this case. But the expert, the same thing here and this is on 10791080 of the record. He didn't really review their gross profit margin. He didn't review their tax returns. He didn't review their profit and loss statements. He didn't review their balance sheets. They never lost any work. They never had to refer cases out. They didn't turn away business. They didn't miss court deadlines. There was not one scintilla of evidence that there was any lost profit to the firm because they had to take some of their lawyers and put them over here and have them work on the Cordell action. Not one piece of regard to the collateral estoppel issue. Um, the court has not raised any questions here this morning, so I'll just rest on our brief on that issue. And I asked that the court affirm. Thank you for allowing us to appear by zoom. Appreciate it. Thank you, Mr Cole. Mr Weaver, you've reserved some time for rebuttal. Yes, thank you, Your Honor. Almost everything Mr Cole just said is an argument about the weight of the evidence. We were here on summary judgment on summary judgment. District court is not allowed to weigh evidence. My clients are entitled to reasonable inferences based on the evidence. So the reasonable inference that you can draw on that a fact finder could draw from this evidence is that had the money been available to Mr Kaplan and Mr Silverman, they would have invested in these opportunities based upon things other than Mr Silverman and Mr Kaplan's testimony. There is evidence in the record of what they actually invested in win in terms of the investment statements and the returns. So it's just wrong to say that there's nothing more in the record than the testimony of the people with personal knowledge about what about what they would have done. Um, and, you know, judge will go into one of your questions. I think it's absolutely correct. Um, for purposes of summary judgment, the other side spin on our evidence is irrelevant. Um, I agree with that 100%. Um, we haven't talked much about collateral estoppel. I'm going to spend some brief time on it. Um, there has never been a case other than this district court's order that bars a plaintiff in a bad faith case seeking damages. It did not recover in the contract case. Uh, the arbitration panel awarded damages based upon the contract language after the floor of Supreme Court's opinion in January 21st of this year. There is no longer any dispute under Florida law. Reasonable foreseeability, which is the standard under the statute, is not the measure of damages under an insurance contract. So the question the jury would be asked in this case is, was it reasonably foreseeable as a result of Nautilus is statutory violations that this this unrecovered money needed to be spent by my clients? Not not was not was the money that already recovered reasonable. That issue has already been decided by the arbitration panel. Um, and as Judge Lagoa, you alluded to in your question, um, it's been the law in Florida since at least 1992 in the McCain versus Florida power case that reasonable foreseeability is a question of fact. Um, and, you know, issues of whether, um, the defendant would have known about the exact scope of the damage or the means of the damages are irrelevant under that framework. Um, very briefly, I want to talk about the nebula glass case. Um, it's I think the leading case on the issue of lost profits. The only testimony that supported a jury verdict in award of lost profit damages in that case was a testimony of the plaintiff, the owner of the business, um, corroborated by two customers of the business and an expert to speak on the amount. Um, this court and nebula glass found that that was enough and also looked to W. W. Gay to say, look, the uncorroborated nature of the evidence is not relevant when it comes to sustaining a claim for lost profits. We ask you, Mr Weaver and Mr Scott. Thank you. And that concludes our docket for the week. And this court is now adjourned. Have a great day, everybody.